By the WHOLE COURT.
PROYOSTY, C. J.
This is a petitory action to recover the undivided one-fifth of a tract of land which has become very valuable as the result of the discovery of oil in it. This tract of land was at one time known as the Peter Johnson plantation. At the death of Peter Johnson, in 1876, the plantation passed to his three sons and four daughters. Two of the sons, John and Travis, died intestate and without issue, -leaving, as their sole heirs, their surviving brother, 6. C. Johnson, and their four sisters. Plaintiff claims to have acquired the one-fifth in question from G. C. Johnson; while the defendants J. S.- Jolley;, E. J. Gather, B.' M. Masser, 'and the Texas Company, hold title to the entire tract under the four, sisters.
The contention of the defendants is that some years before the year 1892 G. C. Johnson gave to his four sisters his one-fifth interest in this, their father’s plantation, for the four-fifths interest of his sisters in an adjoining farm inherited by all five of them from their brother, John Johnson; that this deed of exchange was lost without having been recorded; that to supply the loss G. C. Johnson executed in May, 1892, an act under private signature in favor of his said four sisters; that the latter deed was duly acknowledged before a notary public in Texas, where all the parties then lived, and was duly recorded in the parish of Caddo, where the land is situated.
The learned trial judge believed this contention to be well founded, and dismissed the suit. In his reasons for judgment, he said:
“Without quoting the testimony on the question of interposed party, we think the evidence plainly shows that plaintiff did not pay one cent for this property, but the property was put in his name merely for the purpose of suit in the hope that some advantage might be gained.”
We are of precisely the same impression; and, furthermore, have, like our brother below, not the slightest doubt of the verity of the testimony of the two surviving sisters to the effect that the exchange did take place, and that the second lost deed was executed to supply the loss of the first lost deed.
*215 Plaintiff, of course, contends that the recorded deed is a forgery. But the uncontradicted testimony is that from the time of said exchange the sisters had exclusive possession of the property, paid the taxes, and kept the revenues, and that for many years, 10, 12, or more, before the institution of this suit, G. 0. Johnson knew that this deed stood of record, and that he never questioned the same, and never mentioned the matter to his sisters. The latter he most certainly would have done if, as now intimated, the said deed had been forged by the husband of one of the sisters. If fraud there had been, the sisters would certainly have known of it, and to that extent have participated in it; and such a thing is not even intimated.
While G. C. Johnson denies having executed this deed, J. H. Stephens, husband of one of the four sisters, and sole witness to the deed, testifies that Johnson did execute it. And there is no dispute but that in May, 1S02, Stephens transmitted from Texas to the clerk of court of Gaddo parish the deed in question for registry. The letter of the clerk of court, of that date, acknowledging receipt of the deed, and sending a copy of it is in the record. In this letter the clerk of court says that he sends,only a copy because he “cannot let the original deed go out of the office.”
. It is charged that J. H. Stephens abstracted this original in order that the forgery might not be detected. The useful time to have advanced this charge of forgery would have been years ago when G. O. Johnson first knew of the existence of this deed; when the deed was, or at any rate was supposed to be, on file in the archives of the clerk’s office of Gaddo parish. The charge, needless to say, is supported by nothing, save arguments sought to' be based upon more or less weak inferences — mere surmises.
If therefore the plaintiff is to succeed in this case, it must be by reason of some defect in said deed, or by reason of its not being admissible in evidence; both of which he contends.
The deed is said to be defective in that its description of the property is insufficient. This description reads:
“Certain track or body of land situated in Gaddo parish, Louisiana, on or near the mouth of Black bayou, and known as the Peter B. Johnston place, described as follows, to wit:
“West half and the east half of the east (sic) Sec. 27, also the east half of the southeast quarter of Sec. 27 and the south half of southwest quarter and southwest quarter of the southeast quarter of Sec. 22, (W% of, and the W% of E% Sec. 27 &<®% of SE% Sec. 27, and S% of SW% of SE% of Sec. 22) containing 680 acres in T. 22 R. 15.”
 The township and range are not given in this description, and the map of the parish of Gaddo is not in the record, nor is there any other evidence to show whether the sections 22 and 27 in question are the only ones which would come within the descriptive words “on or near the mouth of Black bayou”; so that the description may be said to be. insufficient as against third persons, who are not required to make inquiry beyond the record. Moreover, there is testimony to the effect that the land in question, or Peter B. Johnson place, is some five or six miles from the mouth of Black bayou. But the plaintiff, Burns, cannot be considered as a third person in this case; he having evidently been interposed by G. O. Johnson — for the very purpose, doubtless, of having the present suit brought by a third person who might take advantage of this defect of description.
The Texas notary, now an insurance agent, appeared as a witness for plaintiff in the case. He testifies to a recent interview had in his office with J. H. Stephens, the witness to the deed. He says that in this interview Stephens told him that it was he (the notary) who had affixed G. 0. Johnson’s signature to the deedi at the request of Johnson, who had first requested him (Stephens) to do it, pleading nervousness. The notary was not questioned as to whether, or not, he had *217 taken the acknowledgment in question. Doubtless, this was because 'he was known to have no recollection, one way or the other, in the matter.
It is said that Stephens does not testify that G. G. Johnson actually signed the deed, and that therefore his testimony falls short of proving the execution of the deed. We do not think so. He testifies positively that the day this deed was “written and delivered to him by G. G. Johnson” he sent it to the clerk of court of Caddo parish for registry.
There was a reason why in May, 1902, J. H. Stephens should have desired to have the loss of the deed of exchange supplied by the execution of another deed. He had a few months previously, in October and November, 1891, acquired the one-fourth interests of his two sisters-in-law, Sallie Johnson and Maggie Johnson Douglas, in consideration of $212.50 cash to the latter and of the transfer by him to the. former of two acres of land in Texas, worth $40 per acre, and $132.50 cash.
Nothing shows that at that time this was not the full value of these two one-fourths of this land. Stephens’ having acquired this interest shows ample motive for his having desired at that time to have this deed executed and recorded; whereas, the small amount involved ($424.50) would show little motive indeed for a man of his standing to commit forgery — especially to let the execution of the deed be known in the family, so that knowledge of it would inevitably reach the ears of G. O. Johnson, and bring about scandal and disgrace, if not infamy. His testimony in this ease impresses us, as it did the trial judge, as being perfectly candid and straightforward.
Even so late as six years thereafter, in 1907, Mrs. J. H. Stephens sold her one-fourth interest in the land for $680.
Why these sisters should have been selling a one-fourth interest in this land, if they had not known that one-fourth, and not one-fifth, was the extent of th'eir interest, it would be hard to explain, except on the assumption of their having known that by the exchange made with their brother, G. 0. Johnson, the latter had transferred to them his one-fifth interest.
All this was at a time entirely unsuspicious. Whereas, after the property had acquired large value from the discovery of oil upon it, the situation changed entirely. Plaintiff alleges that as much as 300,000 barrels of oil has already been extracted from the land.
The recorded deed contains no attestation of the official character of the Texas notary, as required by the act of Congress in order that the acknowledgment made before this Texas notary should impart to it an authentic character in Louisiana, by which it should make proof of itself; and by which, as a consequence, a duly certified copy of it by the clerk of court and ex officio recorder of the parish of Oaddo, the official depositary of it, should in itself be evidence ; but the execution of the deed having been, as we find and hold, sufficiently proved, and the loss of the original having also been, as we find and hold, sufficiently proved, we do not see why the said copy made by the clerk of court should not be admissible in evidence in connection with the testimony of J. H. Stephens to establish the contents of the. original. It would most’ unquestionably have been admissible in connection with the testimony of Stephens if the latter had made it himself; for it would have been a written memorandum testified to by Stephens as having been made by him and more reliable than his mere recollection. The fact that Stephens neither made it nor saw it made, nor compared it with the original, loses significance in view of the peculiar situation in this case. The record of the deed in the clerk of court’s office, and the letter of the clerk of court acknowledging receipt of the original of the deed so recorded and transmitting a duly certified copy of it, and this *219 certified copy itself, in themselves, as also the possession which Stephens has had ever since then, 1892, of this certified copy — are facts which stand in the record; and, we say, they impart to this certified copy a degree of reliability, as being a faithful reproduction of the lost deed, as great as, if not greater than, if Stephens had made the copy himself. Since it would be admissible if Stephens had made it, still more ought it to be admissible under these circumstances.
Under all the circumstances of the case, we conclude that G. O. Johnson did execute the deed in question, and that the said certified copy offered in evidence is a true copy of it, and thaf as between the parties it shows a transfer by G. C. Johnson to his four sisters of his one-fifth interest in the land in controversy.
Whether said deed of May, 1892, merely supplied the loss of the lost deed of exchange or constituted a new deed, it inured to the benefit of J. H. Stephens for the fourth interests of the two sisters Sallie Johnson and Maggie Johnson Douglas; they having transferred their said interests to him a few months previously by the sales of October and November, 1891.
Judgment affirmed.
0’NIE.LL, J., concurs in the result.